Mr. Justice GRIER
 

 delivered the opinion of the court.
 

 The defendants in error, Jenness, Gage, & Co-., instituted this .suit against Philip Peck and William Bellows, in the Court of Commtm Pleas of Cheshire county, New Hampshire, demanding the sum of $ 2,000, for goods sold and delivered. The action was served according .to the practice of that State, on the 10th of October, 1842, by the'attachment of the goods, chattels, and lands of the defendants. The- cause was continued till April term, 1844, when - Aaron P. Howland, as-signee in bankruptcy of each of the defendants, was, on motion, .admitted by the court. to come in and defend in their names.- He pleaded severally their application to the District Court of the United States, at Portsmouth,.on the 26th of November, 1842, for the benefit of the bankrupt law ; on which •they were decreed bankrupts, on the 28th day of December, 1842. That Howland was appointed assignee, and that defendants severally received a certificate of discharge on the 21st of June, 1843.
 

 To these pleas the plaintiffs below replied, that, before the filing of said petitions by the defendants, to wit, on the 8th of October, 1842, the plaintiffs in good faith sued and prosecuted out of the Court of Common Pleas their writ of attachment against the defendants for a just debt; by virtue of which the sheriff attached and took into his custody and possess!» n, as security for such judgment as the plaintiffs in their said suit might obtain, certain goods and cháttels on a schedule an- . néxed, and now retains the custody thereof; and therefore pray judgment to be levied of the sanie.
 

 To this replication the defendants rejoined, that Howland, the assignee, on the 25th of July, 1843, presented to the District Court ..of the United States a petition, setting forth the plaintiffs’ attachment of the goods, and averring that such at
 
 *619
 
 tachment was not a valid lien on the said goods, and that therefore the sheriff had.no right to detain them ; and prayed the court to order and decree that the sheriff should deliver the goods to the assignee, or account for their value : and that' the court, after notice to the parties and hearing, had decreed accordingly.
 

 To these rejoinders the plaintiffs demurred
 
 ;
 
 and the Court of Common Pleas entered their judgment, as follows: — “ That the .plaintiffs recover against the said Philip .Peck and William Bellows $ 1818.87, damages and costs of suit; which • sums are to be levied only of the goods and chattels and estate of the defendants attached upon the plaintiffs’ writ aforesaid, and described in the plaintiffs’ said replications, and' not otherwise.”
 

 This judgment of the Court of Common Pleas was removed by writ of error to the Superior Court of Judicature of the State of New Hampshire, at the instance of the defendants
 
 ;
 
 and, on hearing the judgment of the".court below, was' affirmed.
 

 . The defendants, now plaintiffs in error, then prosecuted their writ of error .to this court, under the twenty-fifth section of the Judiciary Act of 17S9. As the record shows that the highest court of judicature of the, State of New Hampshire has decided against a title-claimed under a statute of the.United States, it is clearly a proper case for the revision of this, court.. Various questions have been made on the argument of this case, as to the regularity of the bankrupt proceedings, and the validity of the certificates of discharge set forth in the pleas of the defendants below. But we do not think it necessary to notice them; and shall therefore assume that the bankrupt proceedings are regular, and-properly set forth in the pleas.
 

 I.' The first- question that will present itself for our consideration will be, whether the replication of the plaintiffs below’ sets forth matter in avoidance of the plea which will entitle them to the judgment prayed for, and afterwards rendered by the court. In order to test its sufficiency, we must first inquire, whether an attachment of property under the process peculiar to New Hampshire and some other States creates a lien or security on the property attached, within the true meaning and intention of the proviso of the second section of the bankrupt act.
 

 The words of this proviso are as follows
 
 “
 
 And provided, also, that nothing in this act contained shall be construed to annul, destroy, or-impair any lawful rights of, married women, or any liens, mortgages, or other securities on property, real or
 
 *620
 
 personal, which may be valid by the laws of the States respectively, and which .are not- inconsistent with the provisions of the second and fifth sections of this act.”
 

 As it is not alleged that the attachment in this case is subject to any imputation of inconsistency with' the provisions of the second and fifth sections
 
 of
 
 the act, it will not be necessary to give them further attention. Taking the words of the proviso, 'disconnected with this exception, they are of the most general and expansive character; they are equivalent to a saving of ajl liens or securities, &c., from any construction of the act that shall in' any wi e annul, destroy, or impair them ; and, furthermore, to test their validity, we are referred to the laws of the States respectively.
 

 At common law there can be no lien without possession. It is there defined, a right in one man to retain that which is in his possession belonging to another, till certain demands of him, the person in possession, are satisfied. (Hammond
 
 v.
 
 Barclay, 2 East, 235'.) In maritime law, liens exist independéntly of possession, either actual or constructive. In courts of equity, ' the term
 
 lien
 
 is used as synonymous with a charge or encumbrance upon a thing, where there is neither
 
 jus in re,
 
 nor
 
 ad rem,
 
 nor possession of the thing. Hence a judgment which, by virtue'of the statute of Westminster-2d, (commonly called the Statute of Elegit,) is a charge upon the lands of the debt- or, is' called in courts of equity in England, and in the courts of law of many of these States, a
 
 lien,
 
 and executions which bind the personal property of the 'debtor, after their delivery to the sheriff, are termed
 
 liens,
 
 both before and after the property is seized and taken into the custody of the law by its officer. In the case of Waller
 
 v.
 
 Best, 3 Howard, 111, this courc decided that in Kentucky the creditor' obtains a lien upon .the property of his debtor by the delivery of a
 
 fi. fa. to
 
 the sheriff, and this lien is as absolute before the levy as'after ,• and that a creditor is not deprived of this lien by an act of bankruptcy on the part of the debtor, committed before the levy is made, but after the execution is in the hands of the sheriff; and “it is unnecessary,” say the court, “ to remark .upon the cases which have been decided 'in other States, or in England, because the question depends altogether upon the law of Kentucky.”
 

 It would-be an arbitrary and fanciful exposition of the terms of this proviso to say • that it saved common-law liens, and not statute liensj. liens after judgment, and not liens' before judgment; or to assert that it is the policy of the, bankrupt act to save the lien of a factor or bailee, while it annuls that of the judgment or execution creditor.
 

 
 *621
 
 It is clear, therefore, that whatever is a valid lien or security, upon property, real ór personal,, by the laws of any State, is exempted by the .express language of the act.
 

 Let us inquire, then, whether an attachment on mesne process is a valid lien or security on the property attached by the laws of New Hampshire, as expounded by her courts.
 

 This species of process is peculiar to the New England States. ■ As early as' the year 1650, while New Hampshire was. united to the Massachusetts colony, it was enacted, that “henceforth goods attached upon any action shall not be released upon the appearance of'the party or judgment, but shall stand engaged until the judgment- or the execution granted on the same be discharged.” (Charters and Colony Laws, 50.) And a proviso was added in 1659, that, when. execution was not taken out within one month after judgment, the attachment shall be released and void in law, &c.
 

 The eárliest provincial legislation of New Hampshire adopted the' same system, which has been continued with some variations to the present day. In 1718, they describe the 'goods attached as “ security to satisfy the judgment ” which the plaintiff might recover on the trial. (Provincial Laws N. H. 113.) In the statute of July, 1822, and of November sessions, 1842, ch. 2,- the charge or encumbrance created by an attachment is denominated a
 
 lien.
 

 The mode of proceeding and practice, as at present established, under writs of attachment in the State of New Hampshire, is thus described by the Superior Court of that State, in the case of Kittridge
 
 v.
 
 Warren.
 

 “ In an attachment of personal estate, the sheriff, upon the service of the writ, takes the possession of the goods, and acquires thereby a special property in them, for the purpose of enforcing and protecting the attachment, and the rights of all concerned in the attachment and in the goods. He is then accountable, both to the plaintiff and to the defendant, for the disposition of them. If the plaintiff obtains a judgment, they are seized and. sold upon the execution. If he fails, they are returned to the debtor. Some person may become accountable, for them, and they may thus go back into the hands of the debtor, and the attachment be dissolved; the sheriff having, by means of a receipt for them, the security of some third person, which is in that case.to be-made available to the creditor. But if the attachment is not dissolved, it fastens itself upon the goods, as a charge or encumbrance, like ' the attachment upon real estate, and. the avails of them, are first to be applied to the satisfaction of the judgment, when recovered. Subsequent attachments may be made upon, them by the same sheriff, and
 
 *622
 
 where there are several attachments, the attaching creditors have a right to priority of satisfaction; so far as those goods are concerned, not by priority of judgment, but by that of the attachment. Poole
 
 v.
 
 Symonds, 1 N. Hamp. 292,
 
 294;
 
 Bissell
 
 v.
 
 Huntington, 2 ib. 142; Hackett
 
 v.
 
 Pickering, 5 ib. 24; Kittredge
 
 v.
 
 Bellows, 7 ib. 428; Clarke
 
 v.
 
 Morse, 10 ib. 238.”
 

 The statute of elegit has never been, adopted in this State, and hence a judgment is not treated as a charge or lien on the lands of the defendant, and the reason would seem, to be, because the plaintiff could select his security upon specific property by his attachment at the commencement of his suit, and hold it for thirty days afterjudgment for the purpose of satisfaction'. Hence their courts have denominated the charge or security thus obtained a lien. (See Dunken
 
 v.
 
 Fales, 5 N. Hamp. 538; Kittredge
 
 v.
 
 Bellows, 7 ib. 427; Clarke
 
 v.
 
 Morse, 10 ib. 238; Burnam
 
 v.
 
 Folsom, 5 ib. 568; Kittridge
 
 v.
 
 Warren; Kittridge
 
 v.
 
 Emerson, &c.)
 

 In Massachusetts, also, the charge or encumbrance created by an attachment is denominated a
 
 lien.
 
 See 9 Mass. Rep. 210; Fettyplace
 
 v.
 
 Dutch, 13 Pick. 392; Arnold
 
 v.
 
 Brown, 24 Pick. 95; Kilborn
 
 v.
 
 Lyman, 6 Met. 299, &c. In Connecticut, also, see Carter
 
 v.
 
 Champion, 8 Conn. 550.
 

 Having thus shown that an attachment on mesne process creates a charge on the property attached in favor of the plaintiff, which is, in the language of the statutes and courts of New Hampshire, called a
 
 security
 
 and a lien, it will, be unnecessary to notice arguments which have been urged against them on the ground of their peculiarities or distinctive features. The mere accidents of the subject cannot alter its essence: It is a statute lien, and therefore as much protected by the general language of the. proviso .as a common law lien.
 

 II. Could this lien be defeated by the interposition of the plea of bankruptcy as a bar to a judgment in favor of the plaintiff?
 

 By the fourth section of the act, it is declared, that “ the certificate or discharge, when duly granted, shall, in all courts of justice, be. deemed a full and complete discharge of all debts, contracts, and other engagements of such bankrupt which are provable under this act, and shall or may be pleaded as a full and complete bar to all suits brought in any court of judicature whatever.” And it is contendéd, as the lien of the attachment was defeasible, and could only be rendered absolute and of practical benefit to the plaintiff by the recovery of a judgment for his demand, which is effectually barred by the plea, that therefore the action and the lien mpist fall together.
 

 This couclusion would be undoubtedly correct, if we cron-
 
 *623
 
 strue this section of the act by itself, and without regard to other provisions of the same act.
 

 But it is among the elementary principles with regard to the construction of statutes; that every section, provision, and clause of a statute shall be expounded-by a reference to every other; and if possible, every clause and provision shall avail, and have the eifect contemplated by the legislature. One portion of a statute should not be construed to annul or destroy what has been clearly granted by another. The most general and absolute terms of one section may be qualified and limited by conditions and exceptions contained in another, so that all may stand together.
 

 •The proviso to the second section of this act declares,
 
 “
 
 that nothing in this act contained shall be construed to annul, destroy, or impair,” any liens, &c. Here, then, is an absolute prohibition to the- court to construe the general terms of the fourth section so as to defeat the lien saved by the second. It is clear, therefore, that the coqrt, while it grants the defendant the benefit of his discharge, must do it in such a manner as not to impair the rights saved to the plaintiff. All liens, whether by mortgage or judgment, by common law or by statute, are for the purpose of obtaining satisfaction of some debt or claim ; and the construction of the fourth section which would treat the .bankrupt’s certificate as an absolute discharge from all his debts, for every purpose, would be alike destructive of them all. The mortgagee, the factor,-or the bottomry lender, is in no better condition than the judgment or attachment creditor. And an attempt to make a distinction between them, which would save the rights of one, and impair or destroy those of the other, would be judicial legislation,
 
 —jus dare,
 
 not
 
 jus dicere.
 
 In order, therefore, to give full effect to all the provisions of the act, the bankrupt’s certificate must be made to operate as a discharge of his person and future acquisitions, while, at the same time, the mortgagees or other lien creditors shall be permitted to have their satisfaction out of the property mortgaged or subject to lien. A legal right without a remedy would be an anomaly in the law.
 

 The judgment rendered in this case has fully attained both these objects. While it discharges the defendant from personal liability, it saves to the plaintiffs below their remedy, and ■awards their satisfaction out of the property attached, “and not otherwise.”- The books are full of precedents for such a judgment. When an administrator pleads
 
 plene administravit,
 
 the plaintiff may admit the plea, and take judgment of assets,
 
 quando acdderint.
 
 When the defendant pleads a discharge of his person under an insolvent law, the plaintiff may confess the
 
 *624
 
 plea, and have judgment to be levied only of defendant’s future effects. 1 Chitty, PI. 548.
 

 III. The only question that remains to be considered is,. whether the rejoinder of the defendants below is a sufficient answer to the replication.
 

 It sets up, by way of avoidance of the attachment pleaded in the replication, that the District Court of the United States, on the petition of the assignee, and on notice to the plaintiff in this suit, had decreed that _this attachment was not a lien oii the property in the custody *he sheriff, and ordered him to deliver it up to' the assignee, or account to him for its value. It does not pretend to show how the proceedings in the Court, of Common Pleas had been removed to the District Court, or how its judgment on the cause pending before it could be thus anticipated; nor that the District Court had found any means of enforcing its decree by compelling the sheriff to deliver the property attached to ■ the assignee, and thus, in effect, destroy the-lien: but it seems to rely on,the decree as a judgment on the question, which should operate by way of estoppel. This necessarily involves the inquiry, whether the District Court was vested with any power or authority to oust the Court of Common Pleas of its jurisdiction over the cause, aud supersede its judgment, by this summary proceeding.
 

 The District Court has exclusive jurisdiction
 
 "
 
 of all suits and proceedings in bankruptcy.” But the suit pending before the Court of.Common Pleas was not a suit or proceeding in bankruptcy; and although the plea of bankruptcy was interposed. by the defendants, the court was as competent to entertain and judge of that plea as of any other. It had full and complete jurisdiction over the parties and the subjecfc-mattér of the suit; and its jurisdiction had attached more than, a month before any act of bankruptcy was committed. ‘It was an independent tribunal, not deriving; its authority from the same sovereign, and, as regards the District .Court, a foreign-'forum, in every way its equal. The District Court had no supervisory power over it. The acts of Congress point out but- one mode by which the judgments of State courts can be revised or annulled, and that is by this court-, under the twenty-fifth section of the Judiciary Act. In certain cases, where one of the parties is a citizen of another State, he has the privilege of removing his suit to the courts of the United States. But in all other respects, they are to be regarded as equal and independent tribunals..
 

 It is a doctrine of law too long established to require a citation of authorities, that, where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and -
 
 *625
 
 whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every other court; and that,where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in' it, have once attached, that right cannot be arrested or taken away by proceedings in another court. These rules have their foundation, not merely in comity, but on necessity. For if one may enjoin, the other may retort by injunction; and thus the parties be without remedy; being liable to a process for contempt in one, if they dare to proceed in the other.- Neither can one take property from the custody of the other by replevin or any other process, for this would - produce á conflict extremely embarrassing to the administration of justice. In the case of Kennedy
 
 v.
 
 The 'Earl of Cassilis, Lord Eldon at one time granted an injunction to restrain a party from proceeding in a suit pending in the Court of Sessions of Scotland, which, on.more mature reflection, he dissolved ; because it was admitted, if the" Court of. Chancery could in that way restrain proceedings in an independent foreign tribunal, the Court of Sessions might equally enjoin the parties from proceeding in chancery, and thus they would be unable to proceed in either court. The fact, therefore, that an injunction issues only to the parties before- the court, and not to the court,, is.no evasion of the.diiflculties that are the necessary result of an attempt to exercise that power over a party who-is a litigant-in another and independent forum.
 

 The act of Congress of the 2d of March, 1793, ch. 66, § 5, declares that a writ of injunction shall not be granted “ to stay proceedings in any court of a State.” In the case of Diggs
 
 v.
 
 Wolcott, 4 Cranch, 119, the decree of the Circuit Court had enjoined the defendant from proceeding in.a suit pending in a State court,-and this-court reversed the decree, because it had no jurisdiction to enjoin proceedings in a State court.
 

 It follows, therefore, that the District Court had no supervisory power over the State court, either by injunction or the more summary method pursued in this case, unless it has been conferred by the bankrupt act. But we cannot discover any provision in that act which limits fhe. jurisdiction of the State courts, or confers any power on the bankrupt court to supersede their jurisdiction, to annul or anticipate their judgments, or wrest property from the custody of their officers? On- the contrary, it provides that “ all suits in law and equity then pending, in which such bankrupt is a party, may be prosecuted and defended by such assignee to its final conclusion, in the same way and with the same effect as they might have been by such bankrupt.”
 

 Instead of drawing the decision of the case into the District
 
 *626
 
 Court, the act sends the assignee in bankruptcy to the State court where the suit is pending,,and admits its power to decide the cause. It confers no authority on the District Court to restrain proceedings therein By injunction or any other process, much less to take, property out of.its custody or possession with a strong hand. An attempt to enforce the decree set forth in the rejoinder,%ould probably have been met with resistance, and resulted in a collision of jurisdictions much to be deprecated.
 

 In fine, we can find no precedent for the proceeding set forth in this plea, and no grant of power to make such decree or to execute it, either in direct terms or by necessary implication, from any provisions of the bankrupt act; and we are not at liberty to interpolate it on any supposed grounds of policy or expediency.
 

 The plea cannot, therefore, be sustained, and the judgment of the Superior Court of New Hampshire must be affirmed.
 

 Order.
 

 This cause came on to be heard on the transcript of the record of the Superior Court of Judicature of the State of New Hampshire, and was argued by counsel. On consideration-whereof, it is now here ordered and adjudged by this court, that the judgment of the said Superior Court of Judicature be and the same is hereby affirmed, with costs and damages at the rate of six per centum per annum.