TURNER *v.* SOUTHERN RY. CO.

[73 South. 62.]

1. CARRIERS. *Personal injury. What law governs. Obstruction appearing on road. Negligence. Question for jury.*

Where plaintiff was injured in Tennessee by being struck by defendant's train while she was trying to flag the train, her right to recovery is based upon the precautionary statutes of that state.

2. RAILROADS. *Personal injury. Obstructions appearing on the road.*

   Under the Tennessee statutes, Shannon's Code, section 1574, providing that every railroad shall keep its engineer, fireman, or some other person upon the locomotive always upon the lookout ahead, and that when any person or other obstruction appear upon the road, the alarm whistle shall be sounded, the breaks put down and every possible means employed to prevent an accident. Where plaintiff while standing on the railroad track with a lighted paper in her hand flagging the train was struck by a passing train, she was such an "obstruction upon the road" as required the precautionary measures prescribed by said statute.

3. SAME.

   The court held that under the evidence set out in the opinion in this case a peremptory instruction for defendant was erroneous.

APPEAL from the circuit court of Alcorn county.

HON. CLAUDE CLAYTON, Judge.

Suit by Julia Turner against the Southern Railway Company. From a judgment on peremptory instruction for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Thos. Spight* and *W. A. McDonald,* for appellant.

*W. H. Kier* and *Earl King,* for appellee.

HOLDEN, J., delivered the opinion of the court.

Julia Turner, the appellant, sued the Southern Railway Company in the circuit court of Alcorn county for damages for personal injuries alleged to have been caused by the negligence of the railway company, and from a judgment in favor of the appellee railroad she appeals to this court, and, among other errors assigned for reversal, she contends that the lower court erred in granting a peremptory instruction to the jury to find for the railway company. It appears from testimony in the record that Julia Turner, a negro woman, went to White, Tenn., a flag station on the defendant's railway, for

the purpose of boarding one of its passenger trains which passed there at four o'clock a. m.   While she was there on the station platform she heard and saw the train approaching, and, in order to stop it so that she might get on, she stood on the track at the station where passengers get on and struck a match, lighting a piece of paper with which to flag the train, and while standing there with the lighted paper in her hand the train passed by the station at a rapid rate of speed, striking her and knocking her to one side, breaking her arm in three places, tearing the flesh therefrom, and injuring her otherwise.   The speed of the train was not reduced, no alarm whistle was sounded, nor was there anything whatever done by the engineer to prevent the train from striking appellant.   We quote here the testimony of appellant, and also that of John Toney, a witness who testified that he was present with appellant at the station when she was injured.   Appellant testified:

"I went down to the depot that morning to get on the train 'The Newsboy,' and was standing right where they get on it and struck the match, and as I went to flag the train it ran right on up, and it just brushed by and hit me on the arm.   Had made a light.   The paper was burning, but the wind from the train blew it out.   The train did not stop.   It just brushed right on by.   When I knowed anything to do any good, I was between Mr. Holloway's store and the steps.   I was lying there where the train hit me, I suppose.   The train hit me on my arm. It just deadened me all over.   It broke my arm in three places and tore all this off.   I can't get it up to my head; it draws back here.   I suffer now, and have to take medicine all the time to keep the swelling down on this side."

We will say here that the doctor who attended appellant testified that she received the injuries complained of and was unconscious and in a comatose condition for about twelve hours after the injury.

John Toney testified:

''I was down there to go back to Moscow to work; was going back on the train we call 'The Newsboy,' about four o'clock in the morning. Plaintiff is the woman who was there that morning. She got a match from me and went to the track to strike the match, which she struck on the rail or the ties right on the side of the track; said she had to flag the train. She was on the track when she struck the match. The train was some one hundred and twenty-five or more yards away when she went to strike the match. Just as she got started up from the track the train ran up and blew her light out and the match she had struck, and she went across about ten feet just like I would throw my hat across to the wall. The train had given no signal for that particular station before it struck her. I heard the whistle, which seemed to be further down the road, but not at that place. It was so far down the road I could not tell how far it was, but I heard the whistle. It did not whistle or ring any bell for White station. It did not check its speed at all in passing White station that morning.''

The appellee introduced E. O. Mays, the engineer of the train, as a witness in its behalf, and he testified that he was the engineer in charge of the engine on that occasion; that the train was going east and was due at White station at four-eleven a. m.; that his engine had a good electric headlight; that he gave the station whistle and whistled at a road crossing about three-quarters of a mile west of White station; that White station is a flag station; that he received no signal from the conductor or any one else to stop at White's; that he passed through White station on time, running about fifteen miles per hour, and that the station is right on the curve of the track which bends to the right, and with the train going east it throws the light from his headlight almost entirely on the left side where the passengers get on and where the appellant, Julia Turner, claims she was standing; that he was on the box on the engine and on the lookout, and saw no one at all; that no obstruction ap-

peared on or near the track at that place; that he made no effort to avoid striking appellant, as he did not see her. The conductor introduced by the appellee testified that he was looking out the window when the train passed White station, and that he saw no one there. With the above state of facts before the lower court the circuit judge granted a peremptory instruction to the jury to find for the defendant railway company; and the plaintiff below appealed here.

The appellant bases her right of recovery upon a violation of the precautionary statutes of Tennessee, which are applicable in this case, as the injury occurred in the state of Tennessee. We here quote the statutes (Shannon's Code) relied upon:

1574 (1166) 1298. "Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal, or other obstructions appear upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident.

"1575 (1167) 1299. Failure to Observe Precautions.— Every railroad company that fails to observe these precautions, or cause them to be observed by its agents and servants, shall be responsible for all damages to persons or property occasioned by, or resulting from, any accident or collision that may occur.

"1576 (1168) 1300. Observance of.—No railroad company that observes, or causes to be observed, these precautions shall be responsible for damages done to the person or property on its road. The proof that it has observed said precautions shall be upon the company."

It seems clear to us, from the testimony in this record. that the appellant, Julia Turner, went to the flag station White for the purpose of boarding the train, and attempted to flag it while she was standing on the track with the lighted paper in her hand. She pursued the only means she had of stopping the train at this flag station.

While she was standing on the track trying to flag the train she was struck by the engine and seriously injured. The testimony of appellant and the witness Toney, if it is believable, establishes the fact that the appellant appeared as an obstruction on the track when the approaching train was more than one hundred and twenty-five yards away, and she had a light in her hand, and should have been seen by the engineer in traveling that distance, one hundred and twenty-five yards, if he was "upon the lookout ahead." Furthermore, the engineer testified that he had a good electric headlight, and that on account of the curve in the track at that point the light was thrown from his headlight direct on the station premises where the appellant claims she was standing at the time she was struck. Now, if he had been "upon the lookout ahead" as required by law, he could have seen appellant when she appeared as an obstruction upon the track. We understand that the Tennessee courts have held that an "obstruction appearing upon the road," within the meaning of the statute, does not necessarily mean that the person or obstruction shall appear in the center of the track or between the rails, in order to become an "obstruction upon the road," but that when a person or object appears on the road, within the danger zone, or at a place on the road close enough to the track to be struck by a passing train, then the person or object does appear as an obstruction upon the road within the meaning of the law. Therefore, in the light of appellant's testimony, which shows that appellant was standing so close to the track as to be struck by a passing train, and that she appeared and was standing there at the time the approaching train was more than one hundred and twenty-five yards away, we must conclude that the appellant "appeared as an obstruction upon the road" and was injured by being struck by the train of the appellee.

The testimony of the engineer and conductor amounts to a denial that the appellant was there at the station or on the track or was in any way injured at all. The engi-

neer testified that he was on the lookout, but that he made no effort whatever to comply with the statute which required him to sound the alarm whistle, put the brakes down, and use every possible means to stop the train and prevent the accident, because he says that nothing "appeared as an obstruction on the road;" that he did not see the appellant nor any one else at the place where the appellant claims to have been injured; that no person was there on that occasion, and, in other words, the engineer says that the injury did not occur as claimed by the appellant. Of course, this a flat contradiction of the testimony offered by the appellant, and raises a sharp conflict in the testimony of the two parties to the controversy here; and this conflict in the testimony should have been submitted to the jury for their determination.

In view of these conclusions, we think the lower court erred in directing a verdict for the appellee, and the judgment of the lower court is reversed and remanded.

*Reversed and remanded.*