## McAlpine and others *v.* Tourtelotte and others.

*(Circuit Court, D. Kansas. June 8, 1885.)*

1. EQUITY JURISDICTION—SUIT TO QUIET TITLE—EJECTMENT PENDING IN STATE COURT.

    The fact that a complainant in a suit to quiet title founds his claim on a title derived from a decree in bankruptcy, will not give the circuit court jurisdiction to entertain the suit when an action of ejectment for the land in controversy is pending in the state court, and no relief could be granted without enjoining such action.

2. SAME—CONSTRUCTION OF DEED.

    Where a party purchases land of a bankrupt at the assignee's sale, the mere fact that the description of the land is susceptible of two constructions will not justify a resort to a court of equity, as a court of law can, in such a case, decide what is the proper construction to place upon the deed as well as a court in chancery.

3. SAME—REMEDY AT LAW—MULTIPLICITY OF SUITS.

    When a complainant's title is a title which he can enforce at law, he must show some special reason for going into chancery, even though there are several parties opposed to him and contesting his rights.

4. BANKRUPTCY—TITLE ACQUIRED BY PURCHASER AT ASSIGNEE'S SALE.

    When proceedings to set aside a bankrupt's discharge, and subject certain land omitted by him from his schedule, are instituted after the deed of such land has been recorded and the land is scheduled by a new assignee, and sold by order of the court, the purchaser at such sale will acquire whatever title the bankrupt had in the land at the time of the sale, and if the bankrupt got any better or different title from the time he went into bankruptcy to the time the judicial sale was made, that title will inure to the benefit of the purchaser.

Suit by a Bill in Chancery to Quiet Title. The facts appear in the opinion.

*James M. Mason* and *John W. Day,* for complainants.

*Goodin & Keplinger,* for defendants Snyder.

*Jefferson Brumbach,* for defendant Tourtelotte.

MILLER, Justice. This suit is by a bill in chancery, the main purpose of which, perhaps, is expressed in the equitable phrase "to quiet title." The title to be quieted originated in this way: Mr. Joseph E. Snyder, who is the common source of title to all the parties in this controversy, became bankrupt in 1867, and was discharged from liability to all his debts. Not long thereafter there appeared upon the records of the land-titles of the county in which he lived evidence of title in him to property which had not been found there before, which had not been presented by him in his schedule of assets; and this induced some of the creditors to undertake to set aside his discharge, and to subject that property to sale for his debts. It is unimportant to go very much into the details of that proceeding in bankruptcy. It is sufficient to say that the discharge was set aside; that a new assignee was appointed; and that this assignee, under the directions of the court, produced a new schedule of the property, which was supposed to include the land now in controversy—part of it, or all of it.

Mr. Snyder appeared in answer to the proceedings taken against him to set aside his discharge. No special appearance or notice seems to have been served on him in regard to the further proceedings to subject this property to sale as a part of his assets; nor does it appear that he made any response to that particular movement other than that which is made in his answer to the proceedings to set aside his discharge. The schedule of property which the assignee presented, and for which he asks an order of the court that he might sell it, differs in some respects in its description, though it is probable that it was intended to be the same as that which is mentioned in the proceedings to set aside his discharge; but the description brought forward by the new assignee, in his additional schedule, is a very minute description, and says no more than that it was his property, and gives its description by metes and bounds, which was somewhat complicated; but it says nothing about how he became the owner of the property, from whom he derived it, nor what was the nature of his title. The decree of sale proceeded on the same principle, the sale itself proceeded on the same principle, and the deed proceeded on the same principle; i. e., upon the principle of describing the property by metes and bounds and declaring it to be his property, but saying nothing about how he got it, from whom he obtained it, or anything connected with it. Afterwards certain persons sued Snyder, his discharge having been set aside, in the ordinary state courts, and levied an attachment on part of this land for judgment, and had it sold, and bought it, and got the title that such attachment could give. Out of that proceeding two suits have grown up—two actions of ejectment, probably three. Three actions of ejectment, I think, depend on that attachment title.

The heirs of Snyder took possession or had possession of a part of this property, and they were sued in ejectment in the state courts by the holders of this bankrupt title. There were those four actions of ejectment pending in the state courts, growing out of the claim under Snyder and of the possession of these respective titles. Two of these suits, Tourtelotte's and Mrs. Snyder's actions of ejectment, were removed into this court. The suit against Mrs. Snyder and the heirs of Snyder was not originally an action of ejectment, but was a suit in the state court by bill in chancery. That was removed; but two others involving the same subject-matter were left in the state courts. One of these suits, I believe the Tourtelotte suit, has been tried, and verdict rendered against the present plaintiff; taken to the supreme court of the state; reversed; and was pending on a new trial when it was removed into this court. The present suit is a bill in chancery, brought by Nicholas McAlpine, James M. Mason, and Sophia A. Cobb, claiming to be the owners of all this property under the bankruptcy sale and purchase, and the object of it is to compel all these parties who are sued in an action of ejectment, and the one in chancery, to come in and answer in this suit, and try the question in chancery, so

that all may be settled, and one decree rendered to give them a quiet or perfect title against all these parties.

The first thing that presents itself is that no such suit, whether well founded or ill founded, can be maintained against the parties to the action in ejectment pending yet in the state court. The act of congress has decided that no injunction,—and no relief could be had here without an injunction, and that is what is prayed,—that no injunction could be issued to the state courts to a party to prevent his proceeding in a state court, except in such cases where that relief is authorized by the act concerning bankrupts. I think it was in the idea of the party who drew this bill that since he founded his claim on the title derived from the decree in bankruptcy, that this was a proceeding in bankruptcy within the meaning of that statute; but that clearly is not so. The simple meaning of that was and is that since in a bankruptcy proceeding there may be various suits by attachment, by execution, and by a hundred ways, in the state courts, which hold, absorb, and destroy the assets before it could be administered in bankrupt court in that class of actions, the bankruptcy statute allows an injunction against everybody, no difference where their proceeding is; but the old rule remains, that, except in that class of actions, the federal courts will not interfere by injunction in the suits pending in the state courts.

There is another exception also in the case where the federal court first has jurisdiction,—where the matter in controversy is fairly within its jurisdiction,—and shall issue its injunction to a party to that suit to prevent his proceeding in another court. None of these come within this case; and it is very clear that as to the two parties whose suit remains in the state court, and have not been brought here, that this action will have to be dismissed.

We come, then, to consider, however, the cases against Tourtelotte and against Teresa Snyder and the heirs of Snyder. Of course, the parties purchasing under that bankruptcy decree or sale were in the same condition that all other purchasers at a judicial sale are; that is to say, they take what they get. They buy publicly and openly, not of the original owner of the title, but they buy at the hands of the judicial sale by an officer. They take what the law gives them. They run their chances. That is the universal rule with regard to purchases at a judicial sale. Nobody is bound to them for anything. They look to the title they get before they buy; if they do not, it is their own fault. And in this case there seems to be no reason to depart from this, except what I will mention hereafter.

As the land sold was specifically described by metes and bounds, so that it might be said that a surveyor could take his compass and the description and go and lay off that land exactly, there is nothing wanting to identify it, with the single exception that it is alleged that the description is susceptible of two constructions. Very well; let that be so. Where that is the case a court of law has just the same

right to make the construction that a court of chancery has. I know of no right a party has to resort to a court of chancery simply to get a correct construction of a deed or instrument in writing. A court of law can decide and make that construction just as well as a court in chancery. And, if verbal testimony is admissible to enable a party to make that construction, as, for instance, proof of where a certain monument was and is, and the identity of a certain monument, or the variations in courses and distances, all that has been proved a thousand times before juries in an action in ejectment in the same courts. So that there is nothing in the description, or want of description, in this purchase and in this title which justifies their going into a court of chancery.

One of the main grounds relied upon for getting into chancery in this case is what may be called multiplicity of suits; and counsel raise that proposition on two branches of that question. One is, that they have now in process a multiplicity of actions in ejectment, and therefore they ought to be permitted to come in and make these parties adjust the matter in one suit in chancery. There are four actions in ejectment. The doctrine on that subject, of multiplicity of suits for the same thing and by the same parties, is not this case, because these are different parties; and even in that aspect of it, the old doctrine, that where there have been several actions of ejectment between the same parties, always decided in one way, then a court of chancery will interfere, has no application to this case. The only trial that has ever been had resulted in favor of the defendant and not the plaintiffs in this bill. They have never had a judgment in ejectment settling their title; therefore, under that principle, the court of chancery is not to come in and settle the title, when the verdict has been against them. On the other hand, they talk about the multiplicity of persons. They have got, I think, in all, perhaps five or ten persons. These persons represent four different suits or interests. I do not think it ever was held that that constituted a multiplicity of parties. When we come to talk about the necessity of a bill in chancery because of the multiplicity of parties, we talk about hundreds of people; and in a class of cases where you can sue a half dozen who represent everybody, or bring suit in the name of one or two who represent everybody in that suit, and thus settle the controversy. There is no such case here. It is idle to talk about a multiplicity of persons in this suit.

But perhaps the strongest reason for bringing this suit, if you could unite all these parties and make them defendants, is this: That, so far as the question of a common interest or title is concerned, there does exist one of the elements of chancery jurisdiction. The present plaintiffs claim, through their purchase at the bankruptcy sale, all the title which Snyder had at the time of his bankruptcy and the title which he had at the time of the sale, and the other defendants all contest that title; so that there is that common interest on the

side of defendants, and that common interest existing on the side of plaintiffs, and that common subject of contest; but that does not give a right to a suit in chancery. If the plaintiff's title is a title which he can enforce at law, he must show some special reason for going into chancery, even although there are several people opposed to him and contesting him. Now, after listening patiently to all that has been said on the subject, I do not perceive any reason for going into equity. The allegation, so far as I can gather it, is made, I must be permitted to say, in something of a loose way, and is, that after Mr. Snyder got his discharge in bankruptcy, or at the time he made his application for bankruptcy, he had an instrument in writing from one James, which professed to be a deed of conveyance of 10 acres within a much larger space of 40 or 60 or 80 acres, I do not know how much; but did not describe this 10 acres nor give it any locality, nor was the name of any grantee in that paper. After he got his discharge he went and filled up that paper with a description and with his own name, and had it recorded. It seems that thereupon Mr. James, who had been dealing with this property with some other parties, expressed his dissatisfaction with that description of the property, and Snyder reconveyed to James; and James reconveyed to him another piece of property, or the part of the same property, and all these deeds went on record, and were on record at the time the proceedings were instituted to set aside his discharge, and at the time the sale was made by the assignee in bankruptcy. Now, the object of this bill,—the purpose of this bill,—is to prove all these transactions by oral testimony, so as to show what was the property that was purchased by these parties in the sale and in the deed made by the assignee.

The first thing I have to say about that is, if any of that testimony is admissible at all, it is as much admissible in a suit at law as in chancery. If they can make their deed any better by proof of an equitable interest, or of changes in the interest, it is just as competent to do it in law as it is in equity. I know of no reason why the one court should not deal with it as well as the other. It is the same proposition, it is between the same parties; and there is no more power in a court of equity to make that good—to make that deed cover what it does not cover—by description than there is in a court of law.

But now I come to a proposition about which I have a little more hesitation than anything I have said, and as it may be used hereafter, and is one of the reasons, also, why I dismiss this bill, I should like the language to be carefully stated, and must be very careful myself. These proceedings to subject this land to sale by the assignee in the court of bankruptcy were all taken after these deeds were made, and the last one of them was on record in the office of the proper register of lands in the county. Mr. Snyder was brought in, if that was necessary, *de novo*, in order to have his discharge set aside, and he answered, and this matter was set up in that proceeding: that he

did own this land; and that was tried in that proceeding, and his discharge was set aside on that ground. Then immediately the new assignee was ordered to schedule this property, and did schedule, and did get a decree, and did sell it, and these plaintiffs, or the men from whom they purchased it, bought it at that public sale. Now, it is my opinion that the proceeding was binding upon Snyder, and it bound him just so far as it described the land it sold and no further; that whatever title was in Snyder at that time, if he varied the title between the time of his going into bankruptcy and the time of this judicial sale, nevertheless, it took all the interest which he had when the sale was made. I think he was still in the bankruptcy court; that he was still a party to the proceeding; that if he got any better or different title from the time that he went into bankruptcy to the time that this judicial sale was made, that that title inured to the benefit of the purchaser; that such legal title as was then in him on the records of the register's office was sold and bought by these parties, if covered by the description, and no more; that they took what they bought by that description in their deed and in their sale, and they take such title as Snyder had to it at the date of the decree, and that there is no place for chancery to interfere about it. These parties, the present defendants, are purchasers subject to all of these transactions. They are all purchasers subsequent to the decree setting aside his discharge; they are all subsequent to the decree of sale; they are subsequent to the sale and making and recording of the deed; they are all purchasers with notice of what was done in the bankruptcy court; and as that bound Snyder that bound them, and as it did not bind Snyder it did not bind them. There is no issue for chancery to interfere about it. I dismiss the bill.