WESTFELDT et al. v. NORTH CAROLINA MINING CO.

(Circuit Court of Appeals, Fourth Circuit. January 12, 1909.)

No. 745.

COURTS (§ 492*)—CONCURRENT JURISDICTION—STATE AND FEDERAL COURTS.

Where ejectment was brought in a state court and defendants filed a counterclaim, which, after denying the allegations of the amended complaint, alleged that defendants were the owners of the fee, and that plaintiffs were making an adverse claim thereto, as provided by Revisal N. C. 1905, § 1589, authorizing an action to determine conflicting claims to real property, the state courts thereby acquired jurisdiction over the property, and hence complainant, which was a defendant in the state court, could not sue in equity in the federal courts on the same facts and for the same relief, under the rule that in matters of concurrent jurisdiction the court to which jurisdiction first attaches retains it until final determination.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1345; Dec. Dig. § 492.*]

Appeal from the Circuit Court of the United States for the Western District of North Carolina, at Asheville.

For opinion below, see 151 Fed. 290.

In 1869 George Westfeldt bought at the bankruptcy sale of B. H. Cunningham several tracts of land lying in the county of Macon and state of North Carolina, which had been granted in 1860 by that state to Cunningham. These lands lay near the Smoky Mountains, and were wild and inaccessible. In 1877 Westfeldt undertook to locate them, without success at first, but subsequently, through the services of one McDowell, who lived near Franklin, in' Macon county, and who had been the county surveyor who made the surveys upon which the grants' to Cunningham issued, the lands were located, and openly claimed by Westfeldt until his death, and thereafter by his wife, and grantee and devisee, until her death, and then by her heirs and devisees, who, with the exception of Dodette Ottonnie Grinnell and Charles Fleetwood Hunt Westfeldt, are appellants in this appeal.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In 1889-90 somebody discovered copper upon one of the Westfeldt tracts, and considerable excitement arose in the neighborhood, and efforts were made to acquire the copper deposit by a location other than Westfeldt's title. This was attempted through a man named Everett, who had some old grants for lands in the Smoky Mountains which he had unsuccessfully endeavored to locate, but which, according to his claim, lay some miles from the Westfeldt lands.

In 1899 one W. S. Adams, after buying up Everett's claim, went into possession of the land where the copper deposit was, claiming to own it, and began mining for the mineral. The Westfeldts warned the Adams party to desist from their attempts to get their land and to cease their trespasses, but in vain.

March 20, 1901, the Westfeldts sued Adams in the superior court of Swain county, in the state of North Carolina, for the recovery of the lands in an action which put the title thereto in issue. The action was in ejectment, but under the decisions of North Carolina judgment therein is not simply decisive of the right to possession, but is conclusive of the ownership of the land and determinative of the title thereto, and binding upon the parties on the question of title by way of estoppel. The action was tried in that court, and resulted in a verdict in favor of the Westfeldts, followed by a judgment declaring that they were the owners of the land and that Adams was in unlawful possession of it. Adams appealed to the state Supreme Court, where the judgment was reversed, and a new trial ordered because of the admission of incompetent evidence. Westfeldt v. Adams, 131 N. C. 379, 42 S. E. 823.

On the return of the case to the superior court of Swain county it was removed by consent to the superior court of Haywood county, and the North Carolina Mining Company was made an additional defendant, whereupon plaintiffs filed an amended complaint, and defendants Adams and the mining company, on October 12, 1903, filed an amended answer and counterclaim, which, after denying the allegations of the amended complaint, proceeded thus:

"And for a further defense, and by way of counterclaim, the defendants allege and say: (1) That they are the owners in fee simple and seised and possessed of two tracts of land described as follows: [Here follows description.] (2) That the plaintiffs unlawfully and wrongfully claim an interest in said lands, and to be the owners of the same, pretending that they are embraced within the boundaries of the tract of land described in the complaint herein, which said pretended claim the defendants say has no foundation in fact. Wherefore the defendants demand judgment: First. That the plaintiffs take nothing by their complaint, and that the defendants go without day. Second. That the defendants are the owners in fee simple of the said two tracts of land described in their counterclaim herein, and that all persons in privity with the plaintiffs be perpetually enjoined from making claim to said lands. Third. And for any other and further relief to which the defendants may be entitled, and for the costs of this action."

The record from the state court does not seem to show the filing of a reply until November 3, 1906, and this denied the first and second paragraphs of the counterclaim.

The case was tried again in the Haywood superior court, and resulted in a verdict in favor of the Westfeldts, and it was thereupon adjudged that the Westfeldts were the owners of the land in fee simple, and that Adams and his codefendants were in unlawful possession thereof, and it was adjudged "that a writ of possession and execution be issued from this court, and duly executed according to law." Again there was an appeal by Adams and his codefendants to the Supreme Court of North Carolina, and again that court ordered a new trial, expressing regret that it felt compelled to do so, on the ground that the trial court had failed in its charge to call the attention of the jury sufficiently, as it was stated, to the difference between substantive evidence and evidence which went merely to the credibility of a witness. Westfeldt v. Adams, 135 N. C. 591, 47 S. E. 816. The cause was accordingly returned to Hayward county for a new trial, and a special term of court was called for the first Monday of December for that purpose, that being December 3, 1906.

July 27, 1905, the North Carolina Mining Company filed in the Circuit Court of the United States for the Western District of North Carolina the bill of complaint which constitutes the present case. This suit was brought under an act of North Carolina of January 31, 1893 (Pub. Laws N. C. p. 37, c. 6), entitled "An act to determine conflicting claims to real property," the first section of which read as follows: "That an action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claims." (See Revisal of North Carolina 1905, § 1589.)

The prayer of this complaint was:

"That the defendants claim an adverse estate or interest in the premises, which said claim so affects the plaintiff's title as to render a sale or other disposition of the property impossible, and disturbs the plaintiff in its right of possession. Wherefore, and forasmuch as your orator is remediless in the premises under and by the strict rules of common law, and can only have relief in a court of equity, where matters of this nature are properly recognizable and reviewable, it files this, its bill of complaint, and prays, the premises considered, that it be adjudged and decreed by this honorable court: That all claims of the defendants and each of them are invalid and void; that the defendants have not, nor has either of them, any estate or interest in said property or any part thereof; that your orator is the owner in fee of said property; and that the defendants, and each and every of them, be forever barred from asserting or claiming any estate or interest therein; and that they and each of them be perpetually enjoined from in any manner injuring or hindering the plaintiff in its title or possession."

It will be perceived that the counterclaim in the action in the state court was based on the same statute.

Under the laws and practice of North Carolina a court may administer any relief consistent with the facts and pleadings, and by its answer and counterclaim the mining company had asked that an injunction issue against the plaintiffs in that action, enjoining them from claiming the lands in question, and its title had been passed upon as a matter determined by the judgment in that case, from which an appeal had been taken to the state Supreme Court, as heretofore stated. When the present suit was commenced in the Circuit Court of the United States the pendency of the action in Haywood county was set up among the defenses. Upon it the Westfeldts insisted before the Circuit Judge that the Circuit Court could not, in the circumstances, entertain jurisdiction of the case and should dismiss it, but the Circuit Court denied the motion to that effect, and thereupon defendants moved that the Circuit Court should stay all proceedings in the suit until the decision of the state court, which was also denied.

Appellants further contended that two of the defendants, Henry Grinnell and his wife, Dodette Ottonnie Grinnell, were indispensable parties to the suit, and that the court had no jurisdiction of the case because of the fact that they were citizens, as alleged in the bill and admitted in the answer. of the District of Columbia, and moved the court to dismiss the cause for want of jurisdiction on this ground. This motion the Circuit Judge also denied in order to give time to complainants to make out if they could, as it was stated that they could, that Mr. and Mrs. Grinnell were not citizens of the District of Columbia and were citizens of North Carolina. When the case came on for hearing the North Carolina Mining Company, finding it could not sustain its contention that the court had jurisdiction over these defendants, asked then to be allowed to discontinue the suit as to them, and leave to do so was granted by the Circuit Judge and the cause discontinued. The Westfeldts then again insisted that the cause could not proceed in the absence of the Grinnells, and moved that the action be dismissed for want of indispensable parties, but the court denied their motion.

On the hearing the court certified, "It is admitted by the complainant that the same lands are in controversy here as in the state court of Haywood county." The hearing having been concluded, the Circuit Judge, who was then in Richmond, Va., transmitted to the clerk at Asheville a decree dated November 28th, which was filed and entered December 1st. This decree was subsequently confirmed and refiled January 8, 1907, by the Circuit Court.

And on the same day the Circuit Judge filed a statement of facts which set forth, among other things:

"At the time of said argument of this cause as aforesaid, a special term of said superior court of Haywood county, in the state of North Carolina, had been called by the Governor of that state, the principal reason for calling which had been publicly stated, and was, that said action therein pending might be tried, and said special term was to begin on December 3, 1906, and said case pending in that court had been set for trial as the first case at that term, and to be taken up on the first Monday of that term, to wit, on December 3, 1906, in that court. Due notice had been given of said special term, and a jury had been drawn therefor, and the plaintiffs in said case had subpoenaed for the trial thereof, at that term, numerous witnesses, and had informed the defendants therein of their purpose to insist upon a trial of said cause at said term as soon as it was reached."

The statement then proceeded to set forth that the Circuit Judge, after the hearing had concluded, left the state of North Carolina for the city of Richmond, Va., to attend a term of the United States Circuit Court of Appeals, for the Fourth Circuit, then in session, and notified counsel for the Westfeldts "that it was his purpose, while so absent from the state of North Carolina, to make and sign a decree in the above-entitled cause at some time during the week preceding that which began with Monday, December 3, 1906, and the counsel for said defendants thereupon requested the judge not to make and file any such decree while he was so absent," and if he should do so to enter their exception to his so doing; that the Circuit Judge thereafter, on Wednesday preceding Monday, December 3, 1906, made and signed, while he was yet in the state of Virginia, the decree on file in this case, and sent the same to the clerk of this court, who did not receive it until about the middle of the day on Saturday, December 1, 1906. Counsel for the defendants, on being informed of said decree having been so signed in Virginia, advised their clients not to attempt to try said cause in the superior court of Haywood county on December 3, 1906, or at said special term of that court, but to send their witnesses home, which was done. Accordingly, at the beginning of said special term of the superior court of Haywood county, on Monday, December 3d, counsel for plaintiffs announced to the judge of that court that by reason of said decree they would not feel that they should then ask a trial of said cause, and said case was accordingly continued, solely because of said decree so made having been rendered on the Saturday preceding; that the special term was then adjourned, it having been understood that it would do nothing but try said case, and, the case then being continued, there remained nothing for the court to do.

The decree adjudged that the plaintiff was entitled to the relief prayed for in the said bill of complaint, and was the owner in fee simple and entitled to possession of the said two tracts of land and in the actual possession thereof, and was owner in fee simple and seised and in actual possession thereof at the time of the commencement of this suit. And it was further adjudged and decreed that the defendants Westfeldt had no estate or interest in the tracts of land, or any part thereof, nor had any one of said defendants, "and that the claims of the defendants and of every of them are without foundation in law or fact," and "it was further ordered, adjudged, and decreed that the said defendants and every of them be and hereby are perpetually restrained and enjoined from claiming any estate or interest in said property in any manner whatever," and for costs.

From this decree appellants prosecuted the pending appeal.

F. A. Sondley, Julius C. Martin, D. Ralph Millard, and Alf S. Barnard, for appellants.

J. H. Merrimon, Chas. A. Moore and J. J. Hooker (Merrimon & Merrimon and Moore & Rollins, on the briefs), for appellee.

Before FULLER, Circuit Justice, and MORRIS and BRAWLEY, District Judges.

FULLER, Circuit Justice (after stating the facts as above). The title in controversy in the two courts is the same; all the facts involved in the two litigations are identical; the purpose aimed at is the same in each; the parties to this suit are parties to the action in the state court; the relief sought in each is a final adjudication as to the ownership of disputed lands, with a writ of possession in the one case and an injunction against interference in the other.

The case falls within the rule that in matters of concurrent jurisdiction the court to which the jurisdiction first attaches holds the case, to the exclusion of the other, until the final determination of the matters in dispute. That rule is not limited in its application to cases where property has actually been seized under judicial process before the institution of a second suit, but is applicable to actions dealing actually or potentially with specific property, and it does not rest simply on comity, but on necessity. As Mr. Justice Matthews observed in Covell v. Heymen, 111 U. S. 182, 4 Sup. Ct. 358, 28 L. Ed. 390:

"The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity, with, perhaps, no higher sanction than the utility which comes from concord; but between state courts and those of the United States it is something more. It is a principle of right and of law, and therefore of necessity. It leaves nothing to discretion or mere convenience."

So in Peck v. Jenness, 7 How. 612, 12 L. Ed. 841, Mr. Justice Grier said:

"It is a doctrine of law too long established to require a citation of authorities, that, where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and, whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every other court; and that, where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court. These rules have their foundation, not merely in comity, but on necessity. For, if one may enjoin, the other may retort by injunction, and thus the parties be without remedy; being liable to a process for contempt in one, if they dare to proceed in the other. * * * The fact, therefore, that an injunction issues only to the parties before the court, and not to the court, is no evasion of the difficulties that are the necessary result of an attempt to exercise that power over a party who is a litigant in another and independent forum."

In McAlpine v. Tourtelotte (C. C.) 24 Fed. 69, 71, where a bill to quiet title was filed in the Circuit Court, and it appeared that defendants had previously brought ejectments in the state courts to determine title to the same property as between them and complainant, it was held that the bill could not be maintained, and Mr. Justice Miller said:

"The first thing that presents itself is that no such suit, whether well founded or ill founded, can be maintained against the parties to the action in ejectment pending yet in the state court. The act of Congress has decided that no injunction—and no relief could be had here without an injunction, and that is what is prayed—that no injunction could be issued to the state courts to a party to prevent his proceeding in a state court, except in such cases where that relief is authorized by the act concerning bankrupts. * * * But the old rule remains that except in that class of actions the federal courts will not interfere by injunction in the suits pending in the state courts."

And see Harkrader v. Wadley, 172 U. S. 148, 164, 19 Sup. Ct. 119, 43 L. Ed. 399; Prout v. Starr, 188 U. S. 537, 544, 23 Sup. Ct. 398, 47 L. Ed. 584; Farmers' Loan & Trust Co. v. Lake Shore Railroad Co., 177 U. S. 51, 61, 20 Sup. Ct. 564, 44 L. Ed. 667; Watson v. Jones, 13 Wall. 679, 20 L. Ed. 666; Central National Bank v. Stevens, 169 U. S. 432, 18 Sup. Ct. 403, 42 L. Ed. 807; Orton v. Smith, 18 How. 263, 15 L. Ed. 393; Peck v. Jenness, 7 How. 612, 12 L. Ed. 841; Metcalf v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed. 122; Pickens v. Roy, 187 U. S. 177, 23 Sup. Ct. 78, 47 L. Ed. 128, affirming the decree of the Circuit Court of Appeals for the Fourth Circuit, Pickens v. Dent, 106 Fed. 653, 657, 45 C. C. A. 522, 525.

In the latter case, Goff, Circuit Judge, delivering the opinion for this court, said:

"The course to be pursued has been well defined in cases in which there is a conflict as to jurisdiction between the state and the federal courts. Briefly stated, the rule is this: Considering the peculiar character of our government, and keeping in view the forbearance which courts of co-ordinate jurisdiction exercise towards each other, it follows that the court which first obtains rightful jurisdiction over the subject-matter of a controversy must by all other courts be permitted to proceed therein to final judgment. The federal courts will not interfere with the administration of affairs lawfully in the custody and jurisdiction of a state court, nor will they permit the courts of the states to interfere concerning litigation rightfully submitted to the decision of the courts of the United States."

In the present case there is a specific property in controversy, the title to which and the possession of which are involved. A principal object of the action in the state court was the possession of the land in dispute. If the federal court could, after commencement of the action in the state court, take control of the controversy and decide that plaintiffs in the state court had no title, it would be impossible thereafter for the state court to proceed with the action before it, and, if it so found, adjudge title in the plaintiffs and recovery of possession. Hence the decree in the Circuit Court was an injunction in terms and effect on appellants from proceeding with their litigation before the state court, and consequently a prohibition on the state court to adjudge the title to be in plaintiffs in the suit pending therein, or to take possession of that property for plaintiffs. The institution of the action in the state court looking to the taking of possession of the specific property in litigation was in effect the assertion of the right of control over that property. The action in the state court required the control and dominion of the property involved, or it was ineffective for all purposes. Obviously the object of the action in the United States court was the transfer to that court of the very matters that stood for judgment in the state court, to wit, the title to the lands in dispute and the right to its possession.

In Prout v. Starr, 188 U. S. 544, 23 Sup. Ct. 401, 47 L. Ed. 584, the Supreme Court said:

"The object of the supplemental bill was to restrain the present appellant, as successor to Smyth, from attempting to transfer the very matters that stood for judgment in the federal court to the state court, by filing a bill in the latter. Such a course might bring about a conflict between those courts, and create the confusion so often deprecated by this court. Peck v.

Jenness, 7 How. 612. 625, 12 L. Ed. 841, 846; Chittenden v. Brewster, 2 Wall. 191, 17 L. Ed. 839; Orton v. Smith, 18 How. 263, 15 L. Ed. 393.

"The jurisdiction of the Circuit Court could not be defeated or impaired by the institution by one of the parties of subsequent proceedings, whether civil or criminal, involving the same legal questions, in the state court. Harkrader v. Wadley, 172 U. S. 148, 166, 19 Sup. Ct. 119, 126, 43 L. Ed. 399."

Our conclusion is that the Circuit Court erred in maintaining jurisdiction of this suit, and that its decree must be reversed, and the cause remanded with a direction to dismiss the bill.

It is so ordered.