# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-30617

United States Court of Appeals
Fifth Circuit

**FILED**

June 30, 2014

Lyle W. Cayce
Clerk

AFRICAN METHODIST EPISCOPAL CHURCH,

Plaintiff-Appellee

v.

WILLARD LUCIEN, JR.; ROGER KENNEDY; SAINT JAMES MISSION CHURCH; GEORGE GATON, SR.; THOMAS J. HOGAN,

Defendants-Appellants

SAINT JAMES MISSION CHURCH,

Plaintiff-Appellant

v.

ANNUAL CONFERENCE OF THE AFRICAN METHODIST EPISCOPAL CHURCH IN MISSISSIPPI AND LOUISIANA; CARLTON GALMON, SR.; JAMES MARTIN; OTIS LEWIS,

Defendants-Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before SMITH, WIENER, and PRADO, Circuit Judges.

WIENER, Circuit Judge:

This appeal concerns a dispute over church property between a dissident local congregation ("Saint James") and the national church ("AME") with

No. 13-30617

which it had been affiliated for many decades. Saint James filed an action in the City Court of Hammond, Louisiana, to evict several AME officeholders who had changed the church's locks and taken over the premises. AME countered by filing its own action in federal district court several weeks later, seeking a declaration that in fact it was the members of the congregation's dissident majority who, by severing ties with AME, had disassociated themselves from the true Saint James congregation and thereby relinquished any rights to ownership and control of the disputed property. Two days later, AME removed Saint James's eviction action to the same federal court.[1] Saint James then followed with a motion to have its eviction action remanded to state court and now seeks reversal of the district court's denial of its remand motion or, alternatively, reversal of that court's summary judgment granted to AME in its federal action. We hold that the district court lacked subject matter jurisdiction over Saint James's first-filed state court eviction action, and that federal precedent mandates that the district court abstain from the exercise of jurisdiction over AME's federal complaint for declaratory and injunctive relief while the remanded eviction action is pending in state court. We therefore vacate the rulings of the district court and remand with instructions for it to remand Saint James's eviction action to state court and to stay AME's federal action during the pendency of the state proceedings.

## I. FACTS AND PROCEEDINGS

This appeal comprises two proceedings that were consolidated in the district court. The first commenced on September 27, 2011, when Saint James filed a Rule to Evict Occupants (the "eviction proceeding" or the "rule to evict")

---

[1] The Eastern District of Louisiana's case number for the federal action is 11-2656. The case number for the removed eviction action is 11-2660.

2

No. 13-30617

in the City Court of Hammond, Louisiana. The premises from which Saint James sought to evict the defendants in rule (the "property") is located in Hammond, Louisiana. Named as defendants in rule were the Annual Conference of the African Methodist Episcopal Church in Mississippi and Louisiana (the "Annual Conference," a regional division of AME), Carlton Galmon, Sr. (Saint James's pastor until the time that the congregation split), Otis Lewis (the presiding bishop of the Annual Conference), and James Martin (one of but a few members of Saint James's congregation who had remained loyal to AME). On October 24, 2011, roughly four weeks after the eviction proceeding was filed in state court, AME removed that action to the district court for the Eastern District of Louisiana on behalf of the defendants-in-rule, asserting diversity jurisdiction.

Two days before it removed the Saint James eviction proceeding from state court, however, AME had instituted the second proceeding (the "federal action") by filing a petition for declaratory and injunctive relief in the same federal district court. In that action, AME named as defendants Saint James, its attorney (Thomas J. Hogan, Jr.), and three of its trustees (Willard Lucien, Jr., George Gaten, Sr., and Roger Kennedy), alleging diversity jurisdiction.[2] AME sought, *inter alia*, (1) a declaration that the defendants' acts in purporting to transfer title to the property and in obstructing AME's access to it were illegal, and (2) an injunction prohibiting further interference.

---

[2] AME also alleged federal question jurisdiction, based on the First and Fourteenth Amendments. On appeal, however, AME makes no arguments in support of federal question jurisdiction, and the district court did not address that issue. There is no federal question jurisdiction here: We simply note in passing that the Free Exercise Clause enshrines AME's right to practice its religion free from interference *by the government*, but does not create a cause of action against Saint James or any of the individuals whom AME sued. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (stating that neither the Fourteenth Amendment nor 42 U.S.C. § 1983 reaches "merely private conduct, no matter how discriminatory or wrongful").

No. 13-30617

The parties do not dispute the material *facts* relevant to whether there is federal diversity jurisdiction over the rule to evict, viz., that Saint James and all of its members are citizens of Louisiana; that AME is an incorporated religious denomination and a citizen of Pennsylvania[3]; that Carlton Galmon, Sr., Otis Lewis, and James Martin (collectively, "forum defendants") are citizens of Louisiana; and that the property includes land and improvements located in Louisiana, as well as associated movables and bank accounts, the total value of which exceeds $75,000.

Similarly, although the parties dispute the *relevance* of the facts and circumstances of the property's ownership, they do not dispute the *existence* of those facts: Saint James holds record title to the property[4]; AME is a "hierarchical, connectional religious society" governed by *The Book of Discipline of the African Methodist Episcopal Church*, which includes specific provisions relating to the ownership of property by local churches, and which governed the relationship between AME and Saint James, at least up until the time of the split.

The split was made official by a letter dated July 15, 2011 from Saint James to the Bishop of the Eighth Episcopal District, in which Saint James announced its decision "to no longer be a part of the African Methodist Episcopal Organization and . . . to disassociate from the denomination. . . . From this point on, our church name shall be returned to Saint James African Methodist Episcopal Mission Church." Again, the parties dispute the legal effect of this letter, but not its existence. The same is true of a record document

---

[3] The Annual Conference is a religious corporation and a Mississippi citizen.

[4] Although the record contains a warranty deed executed in 1924 and purporting to transfer some of the property from the "St. James A.M.E. Mission Church" to the "St. James African Methodist Episcopal Church, Inc.," the parties agree that the latter corporation was never certified by the Secretary of State and therefore agree that "[t]itle to the property remained vested in Saint James A.M.E. Mission Church, an unincorporated association."

4

No. 13-30617

that was executed after the split and purports to transfer the property from "Saint James AME Mission Church, Inc., successor in interest to Saint James A.M.E. Mission" to "Saint James Mission Church – Airport Road": the parties dispute the legal effectiveness of this document, but not its existence.

On October 25, 2011, one day after removal of the eviction proceeding, Saint James filed a motion in the district court seeking remand of that action to state court. It insisted that the federal court lacked subject matter jurisdiction because of (1) the absence of a federal question, and (2) the lack of complete diversity of citizenship among the parties. Saint James followed that filing a week later with a motion to dismiss the *federal action*, again asserting the lack of subject matter jurisdiction.

The district court consolidated Saint James's rule to evict and AME's federal action on November 23, 2011. Both the remand motion and the dismissal motion were under submission when, five days later, the consolidated case was transferred to Section "G."[5] The following May, the court denied the remand motion, holding that it could properly exercise diversity jurisdiction over the rule to evict.[6] Saint James filed a motion for reconsideration of the denial of its remand motion, but the district court denied it.

In the meantime, Saint James had answered AME's complaint in the federal action and filed a counterclaim in which it sought (1) a declaration that it (Saint James) is the rightful owner of the property and (2) damages for AME's interference. In early March 2013, AME moved for summary judgment in the federal action. On March 19, 2013, Saint James filed an opposition styled

---

[5] Honorable Nannette Jolivette Brown, United States District Judge (Eastern District of Louisiana).

[6] The district court also denied the motion to dismiss, a ruling which Saint James does not challenge on appeal.

No. 13-30617

"Opposition . . . and Cross Motion for Partial Summary Judgment." As the court's existing scheduling order required that all motions for summary judgment be filed and served by March 12, 2013, however, AME responded with a motion to strike Saint James's cross-motion for summary judgment. The following month, the district court entered an Order and Reasons (1) granting AME's motion for summary judgment, (2) denying Saint James's cross-motion, and (3) denying as moot AME's motion to strike Saint James's cross motion. Saint James timely filed its notice of appeal.

## II. STANDARD OF REVIEW

We "review de novo a denial of remand to state court."[7] A court must remand a case "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction over a case removed from state court."[8] A federal court may exercise subject matter jurisdiction over a state action when the amount in controversy suffices and when there is complete diversity of citizenship between the *properly* joined parties.[9] The removing party must bear the burden of showing that removal is proper.[10] Any "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."[11]

---

[7] *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014) (per curiam) (quoting *Rodriguez v. Sabatino*, 120 F.3d 589, 591 (5th Cir. 1997) (per curiam)).

[8] *Int'l Primate Protection League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 87 (1991) (quoting 28 U.S.C. § 1447(c)) (internal quotation marks and alterations omitted).

[9] 28 U.S.C. § 1332(a); *Vantage Drilling*, 741 F.3d at 537.

[10] *Vantage Drilling*, 741 F.3d at 537.

[11] *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

No. 13-30617

## III. ANALYSIS

### A. Applicable law

A removing party may establish federal diversity jurisdiction by demonstrating that the state court plaintiff "improperly joined" all forum defendants.[12] To establish improper joinder, the removing party must prove either "(1) actual fraud in the pleading of jurisdictional facts, or (2) [the] inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[13] We have explained that "the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[14] A mere theoretical possibility of recovery in state court will not preclude a finding of improper joinder.[15] The federal court's inquiry into the reasonable basis for the plaintiff's state-court recovery is a "Rule 12(b)(6)-type analysis," although the court retains discretion to pierce the pleadings and conduct summary proceedings, including limited jurisdictional discovery.[16] Ultimately, "[t]he burden is on the removing party; and the burden of demonstrating improper

---

[12] *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 572-73 (5th Cir. 2004) (en banc).

[13] *Id.* at 573 (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).

[14] *Id.*

[15] *Id.* at 573 n.9 (citing *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 389 n.4 (5th Cir. 2000)).

[16] *Id.* at 573-74 (cautioning that a district court's allowance of too-extensive discovery risks entangling it in the merits and observing that "inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden").

joinder is a heavy one."[17] We repeat for emphasis that "any contested issues of facts and any ambiguities of state law must be resolved" in favor of remand.[18]

## B. The parties' positions

### 1. *Saint James*

Saint James contends that the district court erred in failing to remand the eviction proceeding because the forum defendants were properly joined: Absent AME's removal, there is a reasonable basis for predicting that Saint James would have succeeded in evicting the forum defendants. Saint James emphasizes its allegations that (1) it owns the property, (2) the defendants-in-rule occupied the property, and (3) they failed to vacate the property after receiving the required notice. As its pleadings comply with Louisiana's statutory requirements, argues Saint James, the proper state court would have evicted all of the defendants-in-rule, including the forum defendants, from the property.[19]

### 2. *AME*

AME makes no effort to support the district court's decision to exercise jurisdiction over the eviction proceeding. Instead, AME emphasizes that Saint James did not challenge the federal court's diversity jurisdiction over the federal action. AME further asserts that the City Court of Hammond did not have jurisdiction over the rule to evict because (1) that action involved a dispute over ownership of immovable property and (2) the value of that property exceeded the City Court's jurisdictional limit.

---

[17] *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011).

[18] *Id.*

[19] Saint James's initial brief includes a footnote suggesting that AME waived its right to remove the eviction proceeding by attaching exceptions to its notice of removal filed in the City Court of Hammond. As we hold that the district court should have remanded the removed eviction proceeding, we need not address the issue of waiver.

No. 13-30617

### 3. *Saint James's reply*

In response, Saint James insists that AME's attack on the jurisdiction of the City Court applies with equal force to all defendants, both diverse and non-diverse, and therefore does nothing to support the exercise of federal jurisdiction. Saint James also claims that it successfully named the forum defendants as defendants-in-counterclaim in the federal action, thereby importing them from the state eviction proceeding into the federal action. Saint James thus insists that there is no diversity in either case.

## C. The district court's reasoning

The district court initially denied the remand motion by concluding that the forum defendants were only nominal parties whose citizenship could be ignored for jurisdictional purposes. The court's basis for this conclusion is unclear. It first stated that the forum defendants "do not fit" the category of "occupants" amenable to eviction under Louisiana law. Then the court reasoned that "any occupancy by the [forum] Defendants has not been claimed on their own behalf; instead the occupancy to be considered here is that of [AME]." The court concluded that "it is clear that whatever actions the [forum] Defendants took, they were done on behalf of [AME] and that [AME] is, in fact, the only alleged 'occupant.'"

Next, on reconsideration, the district court suggested that Saint James's motion for remand included factual assertions—namely, descriptions of each forum defendant's office within AME—which supported the court's conclusion that the forum defendants acted solely on behalf of AME. Finally, in its order and reasons denying reconsideration, instead of reasserting that the forum defendants were not "occupants," the court relied entirely on its theory that the forum defendants acted solely as agents of AME.

9

**D. Discussion**

Construing the jurisdictional statutes narrowly in favor of remand and resolving any ambiguity in fact or state law in favor of remand, we hold that the district court erred in refusing to remand the eviction proceeding. As described above, the district court verbalized at least two distinct reasons for refusing to remand the eviction action: (1) The forum defendants were not "occupants"; and (2) they could not be evicted because they occupied the property only as agents of AME. The district court cites no authority for either proposition, and our research reveals none. Rather, Saint James's rule to evict stated a claim against the forum defendants that complied with Louisiana's statutory requirements.

The relevant Louisiana definition of "occupant,"[20] which the district court did not analyze, confirms that Saint James did allege that the forum defendants were occupants under Louisiana law. Saint James's rule to evict alleged that the defendants-in-rule, "as occupants, are occupying" the property.[21] Saint James also alleged that it has always been the sole owner of the property, and that the forum defendants used the property only at its

---

[20] *See* La. Code Civ. Proc. art. 4704 (" 'occupant' includes a . . . former owner; and any person occupying immovable property by permission or accommodation of the owner, former owner, or another occupant. . .").

[21] Saint James's pleading states the following, under the heading "**RULE TO EVICT OCCUPANTS**":

> ON MOTION OF PLAINTIFF, and on suggesting to the court that defendants, as occupants, are occupying the premises located at 43483 S Airport Rd Hammond LA 70403("the property"); that plaintiff is an unincorporated association, represented by its Trustees; that plaintiff is the owner of the property; that the property is located within the territorial jurisdiction of this Court; that the plaintiff has notified the defendants to vacate the premises more than five days ago; and defendants have failed to vacate the premises.

10

sufferance during Saint James's long association with AME. Accordingly, Saint James alleged that the forum defendants were occupants.[22]

Whether the forum defendants occupied the property only as agents of AME is irrelevant. The Louisiana statutes that create the summary eviction proceeding do not require or imply the need for an inquiry into the identity of the one or ones on whose behalf property is occupied.[23] Stated differently, the question before a Louisiana court in a rule to evict is a simple one: Has the owner satisfied the statutory requirements, including giving the occupant adequate notice?[24] Any delving into the possible agency relationship between the forum defendants and AME is without either statutory or jurisprudential support under Louisiana law.

The district court's opinion includes a reference to the parties' competing ownership claims. The court did not identify the significance that it saw in the ownership dispute within the context of the *jurisdictional* question. The court's reference implies, however, that it believed that it needed to decide the ownership issue to decide whether the forum defendants were improperly joined. In other words, the court appears to have believed that, because a state court likely would have needed to resolve the ownership question before deciding whether or not to evict, it (the district court) had to resolve the ownership question before deciding whether to remand.

This analytical approach might have had special allure to the district court, given that it also had to adjudicate—in the same consolidated proceeding—an action seeking resolution of the ownership question, in which

---

[22] Even if a narrow reading of the statutory definition could have produced ambiguity as to whether the forum defendants were occupants, any such ambiguity in fact or in state law must be construed in favor of remand. *See Cuevas*, 648 F.3d at 249.

[23] *See* La. Code Civ. Proc. art. 4702.

[24] *See id.*; *see also* La. Code Civ. Proc. art. 4704.

the court's jurisdiction was all but unchallenged. We have cautioned the district courts against becoming entangled in the merits at the jurisdictional stage, however, noting that an "inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden."[25]

AME's contentions on appeal are unavailing because—simply put—they are irrelevant. First, AME insists that Saint James has not challenged the district court's diversity jurisdiction over the federal action. AME is correct insofar as Saint James did not appeal the district court's denial of its Rule 12(b)(1) motion to dismiss the federal action.[26] But the fact that the district court's diversity jurisdiction over the *federal action* stands unchallenged is irrelevant to the threshold question on appeal: Could the federal court properly exercise diversity jurisdiction over the *eviction proceeding*?

Likewise, AME's attack on the Hammond City Court's jurisdiction is irrelevant to the question of remand. We express no opinion whether the Hammond City Court was deprived of subject matter jurisdiction over the eviction proceeding when AME filed exceptions that would place the ownership or control of the property in dispute.[27] After all, even AME does not contend— nor could it—that *no* Louisiana court could have exercised jurisdiction over Saint James's eviction rule. The lack of jurisdiction of a *particular* state court cannot serve to vest a federal court with jurisdiction. When inquiring into its jurisdiction, a federal court must assess whether there exists a reasonable

---

[25] *Smallwood*, 385 F.3d at 573-74.

[26] Moreover, Saint James has waived this issue because it challenged the district court's diversity jurisdiction over the federal action for the first time in its reply brief. *Linbrugger v. Abercia*, 363 F.3d 537, 542 n.1 (5th Cir. 2004) (citing *Morin v. Moore*, 309 F.3d 316, 328 (5th Cir. 2002)).

[27] *See* La. Code Civ. Pro. art. 4847(A) ("Except as otherwise provided by law, a . . . city court has no jurisdiction in . . . [a] case involving title to immovable property. . . .").

basis to predict that the party seeking remand might obtain relief from *a* state court—*any* state court—not *which* state court would have been the more appropriate forum in which to file or the one best suited to render a judgment.[28]

For the foregoing reasons, we reverse the district court's denial of Saint James's motion to remand the eviction proceeding, and we remand this issue to that court with instructions for it to remand the case to the state court from which that proceeding was improvidently removed, namely, the City Court of Hammond, Louisiana.

### E. Abstention

Our decision to remand the eviction proceeding does not complete our task. We must now address whether the district court should abstain from exercising its jurisdiction over the remaining portion of the consolidated case, viz., the *federal* action. We conclude that the *Colorado River – Moses Cone* doctrine of abstention ("*Colorado River* abstention") applies in this case and that the district court must abstain by staying the federal action during the pendency of the state eviction proceedings.[29]

---

[28] *See Smallwood*, 385 F.3d at 573. Even if it were relevant, AME's attack on the jurisdiction of the Hammond City Court applies with equal force to all the defendants-in-rule, as Saint James points out. Consequently, if AME's argument had any weight, it would favor remand.

[29] A purely declaratory action "affords a . . . court broad discretion" to defer to a parallel state proceeding. *New England Ins. Co. v. Barnett*, 561 F.3d 392, 394 (5th Cir. 2009). "However, when an action involves coercive relief, the . . . court must apply the abstention standard set forth in *Colorado River Water Conservation District v. United States*," under which the "court's discretion to dismiss is 'narrowly circumscribed' and is governed by a broader 'exceptional circumstances' standard." *Id.* at 394-95 (internal citation and quotation marks omitted). AME's complaint seeks injunctive relief in addition to a declaratory judgment, and therefore the more discretionary approach is not available. *See Sw. Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948, 951 (5th Cir. 1994) ("Inclusion of these coercive remedies [for the breach of a contract in the form of damages, attorney's fees, and injunctive relief] indisputably removes this suit from the ambit of a declaratory judgment action."). *Colorado River* thus governs this case.

No. 13-30617

*Colorado River* abstention is a narrow exception to a federal court's "virtually unflagging" duty to adjudicate a controversy that is properly before it.[30] Under this doctrine, a federal court may abstain only under "exceptional circumstances."[31] Our abstention decision must be based on considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."[32]

### 1. Parallelism

As an initial step prior to application of the *Colorado River* factors, identified below, we address whether Saint James's eviction proceeding and AME's federal action are sufficiently parallel to make consideration of abstention proper. We have previously held that a federal court may stay an action pending disposition of a state court action when the state and federal actions are "parallel."[33] We have identified parallel actions as those "involving the same parties and the same issues,"[34] but we have also noted that "it may be that there need not be applied in every instance a mincing insistence on precise identity" of parties and issues.[35] In light of our duty to consider wise judicial administration, conservation of judicial resources, and comprehensive

---

[30] *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983); *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).

[31] *Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 394 (5th Cir. 2006) (quoting *Kelly Inv. Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 497 (5th Cir. 2002)).

[32] *Colo. River*, 424 U.S. at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)).

[33] *Exxon Corp. v. St. Paul Fire & Marine Ins. Co.*, 129 F.3d 781, 785 (5th Cir. 1997); *see also RepublicBank Dallas Nat. Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987) (per curiam).

[34] *Id.* (citing *PPG Indus., Inc. v. Cont'l Oil Co.*, 478 F.2d 674, 682 (5th Cir. 1973) and *Mendiola v. Hart*, 561 F.2d 1207, 1208 (5th Cir. 1977) (per curiam)).

[35] *RepublicBank*, 828 F.2d at 1121.

disposition of litigation, we look both to the named parties and to the substance of the claims asserted in each proceeding.[36]

As noted at the outset, Saint James's state court rule to evict names the Annual Conference and three individuals as defendants. AME intervened in that proceeding by filing its Notice of Removal and Exceptions "on behalf of" the defendants-in-rule. On the other hand, AME's federal action names Saint James and four individuals as defendants, three of whom (Willard Lucien, Jr., George Gaten, Jr., and Roger Kennedy) acknowledge that they are proper representatives of Saint James; the fourth, Thomas J. Hogan, Jr., is Saint James's attorney at law, and he disputes whether he has any exposure in his personal capacity. To be sure, those named as parties in the two actions are not precisely identical, but the record is clear that there are only two sides in this dispute: The interests of all of the parties named in either action align undisputedly, either with Saint James's interest or with AME's.[37]

AME's federal action focuses exclusively on the property's ownership and on whether those named as defendants in the federal action forwent the legal right to represent Saint James when they split from AME. Saint James's eviction proceeding will undoubtedly require it to prove that it holds title to the property; Saint James will also have to prove that its notice was adequate and that the defendants-in-rule were "occupants." Thus, the eviction proceeding will necessarily dispose of all claims asserted by AME in the federal

---

[36] *Lumen Const., Inc. v. Brant Const. Co., Inc.*, 780 F.2d 691, 695 (7th Cir. 1985) ("In analyzing whether a dismissal or stay will further the interest in avoiding piecemeal litigation, we look not for formal symmetry between the two actions, but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case.")

[37] *See Canaday v. Koch*, 608 F. Supp. 1460, 1475 (S.D.N.Y. 1985) ("Where the interests of the plaintiffs in each of the suits are congruent, Colorado River abstention may be appropriate notwithstanding the nonidentity of the parties."), *aff'd sub nom. Canaday v. Valentin*, 768 F.2d 501 (2d Cir. 1985).

action. We are comfortable that the eviction proceeding and the federal action are sufficiently parallel.

### 2. Colorado River *factors*

With that preliminary matter laid to rest, we turn to the application of *Colorado River*. There are six factors that the court must balance on a case-by-case basis to determine whether exceptional circumstances warrant abstention:

> 1) assumption by either court of jurisdiction over a res, 2) relative inconvenience of the forums, 3) avoidance of piecemeal litigation, 4) the order in which jurisdiction was obtained by the concurrent forums, 5) to what extent federal law provides the rules of decision on the merits, and 6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.[38]

"The decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."[39]

Here, the first *Colorado River* factor weighs heavily in favor of abstention. This property dispute implicates the longstanding "rule that once a court, state or federal, has assumed jurisdiction over an in rem or quasi in rem proceeding, then that court may exercise its jurisdiction to the exclusion of any other court[,] and the res in question is withdrawn from the jurisdiction of any other court."[40] The first *Colorado River* factor incorporates this ancient rule. That opinion cites previous United States Supreme Court decisions which

---

[38] *Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 491 (5th Cir. 2006).

[39] *Moses H. Cone Mem. Hosp.*, 460 U.S. at 16.

[40] *Smith v. Humble Oil & Ref. Co.*, 425 F.2d 1287, 1288 (5th Cir. 1970) (citing *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456 (1939); *Penn Gen. Cas. Co. v. Pennsylvania*, 294 U.S. 189 (1935); *Kline v. Burke Constr. Co.*, 260 U.S. 226 (1922); *Palmer v. Texas*, 212 U.S. 118 (1909)).

No. 13-30617

held "that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts."[41] Saint James, by filing its rule to evict, invoked the Louisiana court's jurisdiction over a Louisiana res, the church's immovable property.[42] The federal court's exercise of jurisdiction in

[41] *Colo. River*, 424 U.S. at 818 (citing cases). Examples similar to the instant appeal can be found at least as early as 1909, when the Fourth Circuit reversed the trial court's judgment, reasoning that the exercise of jurisdiction over a federal suit seeking an injunction against interference with a particular property was inappropriate in light of a state action seeking possession of the same property. *Westfeldt v. N. Carolina Min. Co.*, 166 F. 706, 711 (4th Cir. 1909). The Fourth Circuit explained:

> In the present case there is a specific property in controversy, the title to which and the possession of which are involved. A principal object of the action in the state court was the possession of the land in dispute. If the federal court could, after commencement of the action in the state court, take control of the controversy and decide that plaintiffs in the state court had no title, it would be impossible thereafter for the state court to proceed with the action before it, and, if it so found, adjudge title in the plaintiffs and recovery of possession. Hence the decree in the Circuit Court was an injunction in terms and effect on appellants from proceeding with their litigation before the state court, and consequently a prohibition on the state court to adjudge the title to be in plaintiffs in the suit pending therein, or to take possession of that property for plaintiffs. The institution of the action in the state court looking to the taking of possession of the specific property in litigation was in effect the assertion of the right of control over that property. The action in the state court required the control and dominion of the property involved, or it was ineffective for all purposes. Obviously the object of the action in the United States court was the transfer to that court of the very matters that stood for judgment in the state court, to wit, the title to the lands in dispute and the right to its possession.

*Id.*

[42] The eviction proceeding is an action *in rem* under Louisiana law. Article 8 of the Louisiana Code of Civil Procedure states that "[a] court which is otherwise competent under the laws of this state has jurisdiction to enforce a right in, to, or against property having a situs in this state, claimed or owned by a nonresident." La. Code Civ. Pro. art. 8. The official comment to Article 8 explains that jurisdiction over the property is a natural result of the situs of the property and attaches irrespective of the contemporaneous operation of personal jurisdiction:

> The language of this article does not expressly include the case of an action in rem against property in this state owned by a Louisiana domiciliary, as such a case presents no jurisdictional problem. Not only would the court have jurisdiction over the property, but the defendant may be served with process personally, thus giving the court jurisdiction over him personally.

17

the subsequently filed, parallel federal action would present a significant risk of inconsistent rulings as to the ownership of the property.

The second factor, relative inconvenience of the fora, weighs in favor of abstention, but only slightly. We have explained that this factor "primarily involves the physical proximity of [each] forum to the evidence and witnesses."[43] Traveling by car, the property is approximately five minutes from Hammond City Court, half an hour from the Tangipahoa Parish Courthouse in Amite (the closest of three divisions of the Louisiana Twenty-First Judicial District Court, which district includes Hammond), and just under an hour from the federal courthouse in New Orleans where the Eastern District of Louisiana is located. The record does not contain addresses for many of the witnesses, but, with the exception of two witnesses who reside in Georgia and Mississippi, respectively, it appears that all witnesses reside in or near Hammond, Louisiana. Moreover, the documentary evidence necessary to resolution of these disputes is not voluminous, and most if not all such documents are already before both the state and the federal courts. The additional half-hour's drive makes the federal forum only slightly less convenient, and this inconvenience is minor compared to the 300-mile distance found "significant" in *Colorado River*, a case involving over one thousand defendants.[44]

---

La. Code Civ. Pro. art. 8 cmt. b. *See also Fairfield Prop. Mgmt. Stone Vista Apartments v. Evans*, 589 So. 2d 83, 85 (La. Ct. App. 1991) ("Tacking [the statutory notice to the door of the property] is a special procedure which may be utilized only under . . . special circumstances. . . . It recognizes that the summary proceedings of eviction are in rem by nature, as their sole concern is the [occupant's] right of possession of the . . . property. . . ."); 1 La. Civ. L. Treatise, Civil Procedure § 2:4 (2d ed.) ("The most common 'in rem' action under Article 8 is one for an adjudication of an interest in property between the parties to the action. In Louisiana, many of these 'in rem' actions are the subject of special proceedings, such as the petitory and possessory actions and the eviction proceeding.")

[43] *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1191 (5th Cir. 1988) (Rubin, J.).

[44] *Colo. River*, 424 U.S. at 820; *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947) (upholding dismissal based on forum non conveniens in part because of 400-mile distance between fora).

Like the first factor, the third factor weighs heavily in favor of abstention. "The real concern at the heart of the third *Colorado River* factor is the avoidance of *piecemeal* litigation, and the concomitant danger of inconsistent rulings with respect to a piece of property."[45] If the federal action should continue unabated, the district court and the state court would each determine the same issues with respect to the same property. The risk of inconsistent rulings would therefore be very real.

The fourth factor, the sequence in which jurisdiction was obtained, weighs only slightly in favor of abstention. As noted above, Saint James filed the rule to evict almost a month before AME filed the federal action; however, the priority element "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."[46] At the times of AME's removal of the eviction proceeding and Saint James's motion seeking its remand, neither the eviction proceeding nor the federal action had progressed beyond the initial pleading stage. Nevertheless, the fact that the district court erroneously failed to remand the eviction proceeding and proceeded to issue summary judgment does *not* weigh against abstention.

The fifth factor, whether and to what extent federal law controls the merits decision, is neutral. Although the case involves only issues arising under Louisiana law, we have assessed such cases—even some interpreting recent decisions of a state's highest court—as "at most neutral" under the fifth factor.[47] Such is the case here; it weighs neither in favor of abstention nor against it.

---

[45] *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650-51 (5th Cir. 2000) (citing *Evanston*, 844 F.2d at 1192) (emphasis in original).

[46] *Moses H. Cone*, 460 U.S. at 21.

[47] *Black Sea*, 204 F.3d at 651.

No. 13-30617

The sixth factor, adequacy of the state proceedings to protect AME's rights, is likewise neutral. We have made clear that the sixth factor, like the fifth, can only be neutral or weigh against abstention; it cannot weigh in favor of abstention.[48] Here, there is no indication that AME would suffer from inadequate protection of its interests in a Louisiana court. Indeed, AME has already appeared voluntarily in the eviction proceeding by filing exceptions and its notice of removal on behalf of the defendants-in-rule.

To summarize, two of the six *Colorado River* factors are neutral, two weigh slightly in favor of abstention, and two weigh heavily in favor of abstention. As observed, the two neutral factors could only weigh against abstention, but here they do not. Even though "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule,"[49] this case is the embodiment of that rare exception. The exceptional circumstances present here warrant abstention. Accordingly, our remand with instructions to the district court that it remand the eviction proceeding to state court includes the instruction to that court to stay the federal action before it pending final resolution of those state proceedings.

## IV. CONCLUSION

For the foregoing reasons, we VACATE the district court's judgment and REMAND with instructions to REMAND the eviction proceeding, Civil Action 11-2660, to the state court from whence it came, and to STAY the federal action, Civil Action 11-2656, during the pendency of the eviction proceeding.

---

[48] *Id.* (citing *Evanston Ins. Co.*, 844 F.2d at 1193).

[49] *Colo. River*, 424 U.S. at 813.